BRIEF FOR APPELLEES, J.B. AND P.B.: Erin R. Ratliff, Shelbyville, Kentucky.
BEFORE: J. LAMBERT, MAZE, AND SMALLWOOD,[1] JUDGES.
OPINION AND ORDER
LAMBERT, J., JUDGE:
W.L.F. (the father) has appealed from the June 6, 2017, findings of fact, conclusions of law, and order of the Spencer Family Court denying his motion to have W.C.F. (the child) placed with him or to schedule timesharing with him. Because we hold that the father has appealed from an interlocutory order, we must dismiss the above-styled appeal.
The father and A.N.F. (the mother) are the biological parents of the child, who was born in May 2010. The parents were never married. In September 2015, the Cabinet for Health and Family Services (the Cabinet) filed a Juvenile Dependency, Neglect and Abuse (DNA) Petition (15-J-00052-001) alleging that the father had neglected the child. As grounds, the Cabinet stated:
[O]n September 2, 2015, in Spencer County, Kentucky, ... [the child] was exposed to a domestic violence altercation between his father ... and great uncle ... and PGF [paternal grandfather].... PGF filed an EPO and the police were contacted and [the father] was arrested for assault 4th degree. PGF reports in the EPO and the police report in the JC-3 that [the father] was under the influence of drugs at the time of the altercation. PGF requested that the EPO be dismissed but [the father] was found guilty of the assault charge. [The father] admitted there was an altercation but minimized the incident. [The child] shared with DCBS that the altercation scared him and that his father scared him with what he had done to PGF and great uncle. [The father] was in a caretaker role of [the child] at the time of the altercation.
The family court held a temporary removal hearing on September 15, 2015, during which the father stipulated to reasonable grounds for the child's removal, and the court placed the child with the mother. The court ordered both parents to comply with several terms. The mother was to obtain counseling for the child, cooperate with the Department of Community Based Services (DCBS) and case planning, send the child to school, and have the child present for all supervised visitations. The *157 father's terms were more extensive. He was to undergo drug testing as requested, obtain a drug assessment and follow all recommendations, attend drug/chemical dependency counseling, obtain a perpetrator anger management assessment and follow all recommendations, cooperate with DCBS and case planning, and have supervised visitation with an adult approved by DCBS. The court continued the matter for further proceedings.
On October 19, 2015, the father entered a stipulation of neglect and waived a formal adjudication hearing, and the following day, the family court entered an adjudication order finding the child to be neglected pursuant to Kentucky Revised Statutes (KRS) 600.020(1), continuing to place the child with the mother, and permitting the father to have supervised visitation at the Butterfly House. The court found that the father had been charged with fourth-degree assault that had been committed in the child's presence.
In a disposition report filed in November 2015, the Cabinet stated that the child remained in the temporary custody of the mother, who was ensuring his needs were met, and was attending kindergarten. He was in counseling for behavioral issues. The father was incarcerated in the Nelson County jail for probation violations and would not be eligible for parole until April 2016. He had admitted to being under the influence of drugs during the 2015 incident. The Cabinet recommended that the mother be granted sole custody of the child and noted that the father could not complete any services or work on his case plan because he was incarcerated. The Cabinet recommended that the court put orders in place for the father once he was released and included a list of such recommendations.
The family court entered a disposition order on November 16, 2015, in which it ordered the child to remain in the custody of the mother. The father was present at the hearing. The court ultimately adopted the Cabinet's recommendations for the father, which included that he complete substance abuse and domestic violence assessments and follow all recommendations once released from jail. Prior to seeking custody or unsupervised visitation, the father was required to: 1) complete substance abuse treatment and remain drug-free for at least six months; 2) have a stable income and housing for at least six months; 3) complete domestic violence and anger management services; 4) consistently attend supervised visitations at the Butterfly House that he would arrange and pay for; and 5) complete parenting classes "to assist him with being an appropriate and positive influence" for the child. The court removed the case from the active docket because the child had been placed with the mother.
On April 21, 2016, J.B. and P.B., the maternal grandparents, filed a second DNA petition, this time against the mother, who had custody. The father remained incarcerated at that time. They alleged that the mother had neglected the child on April 16, 2016, stating:
Mother ... not home when [the child] was to be let off school bus due to drug relapse (heroin). [The grandmother (P.B.) ] had to pick him up at Bear Care. [The mother] has not seen [the child] since Monday, 4-18-16 at 7:40 am when [the child] got on bus.
The grandparents stated that the father, as the non-custodial parent, had not been contacted or considered for placement based upon the order restricting placement with him due to his incarceration for assault. The family court entered an emergency order placing the child with the grandparents. The father was appointed *158 counsel and served with summons for the upcoming hearing.
Following a temporary removal hearing, the family court placed the child in the temporary custody of the maternal grandparents. The matter was continued for further proceedings. The court held an adjudication hearing in July 2016, after which it found that the child had been neglected, and it ordered the child to remain in the temporary custody of the maternal grandparents and that the parents' supervised visits with the child take place at the Butterfly House. A disposition order was entered in September 2016, in which the court found the child to be neglected, that it was in the best interests of the child to place custody of the child with the maternal grandparents, that continuation in the home was contrary to the child's welfare, and that reasonable efforts were made to prevent the child's removal. The parents were permitted supervised visitation with the child at the Butterfly House, which they would have to arrange. The court removed the case from the active docket, although the court stated the mother was free to file a motion in the future.
On March 24, 2017, the father filed a motion for the court to place the child in his custody or, in the alternative, to set up a timesharing schedule while he sought employment. In support of the motion, the father included an affidavit from his mother, the child's paternal grandmother. She stated that since the father's incarceration, she had visited with the child on a regular basis and had taken the child to see his father. The child had lived with her in the past. Once he was released from jail, the father would be living at his parents' house and was ready to be a good father. In addition, the father filed his own affidavit in support of the motion. He echoed his mother's statements that he had visited with the child during his incarceration, that he would be living at his parents' residence upon his release, and that he wanted to continue his relationship with his son and live with him. He also discussed the mother's pending legal issues.
Following a court hearing on April 10, 2017, the family court ordered the parties to brief the issues raised by the father, after which it would take the matter under submission. The father moved the court to alter, amend, or vacate that order, stating that it delayed the child's return to him. He had expected to be reunited with the child upon his release from incarceration and mentioned a previous timesharing order. He went on to argue that the court incorrectly put him and the maternal grandparents on equal footing and that there was no indication that his parents were unsuited to supervise visits between him and the child. Supervised visits at the Butterfly House, he asserted, impermissibly restricted his parental rights. In an attached affidavit, the father discussed the 2013 family court case in which he and the mother were awarded joint custody and he would have timesharing. The court denied this motion at a hearing on April 24, 2017.
On May 5, 2017, the father filed various documents in support of his motions. A letter from Bill Green, an anger management treatment provider, dated April 26, 2017, stated that he had recently performed an anger management assessment and reported that the father did not need any treatment for this. Mr. Green thought parenting classes would be "helpful to any parent and might be a good thing to follow up with." A Department of Corrections Social Services Clinician Referral Form dated April 12, 2017, and signed by Bridgette Day indicated that no treatment referral was made, but no reason was included. A letter from Katherine Taylor, the program administrator for the Department of Corrections' Division of Substance *159 Abuse, dated June 23, 2016, stated that a review of the father's application for a substance abuse program established that he did not need any substance abuse treatment. Finally, an April 20, 2017, letter from Maryann Stamper, a caseworker with the Spencer County Child Support office, verified that there was not an open child support case in the system for the child. The child support case opened by the mother was closed in September 2016.
The father filed a brief in support of his motions on May 10, 2017. He challenged the family court's placement of the maternal grandparents on equal footing as him and sought the return of the child to his custody as he had completed his case plan. The maternal grandparents, who had custody of the child, filed their brief shortly thereafter. They pointed out that the father had not abided by the court's orders and there was no law that required the court to return the child to his custody or grant unsupervised visitation.
On June 6, 2017, the family court entered its findings of fact, conclusions of law, and order. After making its findings of fact, the court stated it found the father's brief to be "unpersuasive and disingenuous." The father had not complied with its November 16, 2015, order regarding what he had to do before seeking custody or unsupervised visitation with the child. The court found his references to the civil action and the custody and visitation orders in that case to be misguided because the latest custody and visitation orders in the second DNA cases were the prevailing ones. The court concluded that the maternal grandparents had the ability to commence the DNA case pursuant to KRS 620.070(1) and that the father did not need to be named in the second petition because he was incarcerated at that time. Therefore, the court denied the father's motion to place the child with him or permit unsupervised visitation.
The father moved the family court to alter, amend, or vacate its June 6, 2017, order, asserting that he had not been permitted to present any evidence in support of his motions. In further support, the father filed a list of documents, including a visitation log from the Butterfly House, a curriculum vitae for Mr. Green, and list of dates and topics for parenting classes he had attended in June 2017 at the House of Hope. He later filed a certificate of completion for the parenting classes as well as a letter from Sheila Hourigan, the executive director for the House of Hope related to his parenting classes. She stated that "he will be a nurturing, caring and responsible father to his son, and will bring not only a great sense of humor to this role but one of fairness, understanding, and compassion." Finally, he provided copies of eight $100.00 checks he had received from his parents for farm work between May and August of 2017.
The family court denied the father's motion by order entered September 13, 2017, again recognizing that he had not completed the requirements of its previous order. The court concluded, "If and when [the father] completes what he has been court ordered to do, the Court will consider motions to expand his parenting time." This appeal now follows.
Before we may reach the merits of this appeal, we must address the father's response to the show cause order issued by this Court. We ordered the father to show cause why the appeal should not be dismissed as premature as it appeared that a final and appealable judgment had not yet been entered. The father had appealed from the disposition orders entered September 18, 2015, and November 18, 2016; from the June 6, 2017, findings of fact, conclusions of law and order denying his *160 motion to place the child with him or to schedule weekend timesharing; and from the September 13, 2017, order denying his motion to alter, amend, or vacate the June order. In his response to the show cause order, the father indicated that he was limiting his appeal to a review of the June 6, 2017, order. He claims that order "permanently and irrevocably altered [his] right to parent [the child] without observing constitutional due process safeguards and without following the requirements set forth in KRS Chapter 620 and KRS Chapter 403." The father relies upon an unpublished opinion of this Court to support his argument that the order was final and appealable because in it the court "meant" to permanently modify his right to parent the child.
In their brief, the grandparents argue that this order is interlocutory because it did not finally adjudicate or conclusively determine the rights of the parties, despite the inclusion of (incomplete) finality language pursuant to Kentucky Rules of Civil Procedure (CR) 54.02.[2] The June 6, 2017, order merely denied the father's motion for placement or for timesharing; it did not address his parental rights or any custody issues. And it did not preclude him from seeking further relief in the future.
We must agree with the grandparents that the June 6, 2017, order was not final or appealable as it did not finally establish the rights of the parties. As the grandparents argued, the family court's order recognized that the father had not complied with the requirements put in place when the 2015 disposition order was entered. These requirements, which included substance abuse, parenting, and domestic violence assessments and services, stable income and housing for six months, and consistent supervised visitation, were all to be accomplished when the father was released from jail. Rather than completing these tasks upon his release as he was ordered to do, the father instead sought a new placement for the child or expanded visitation. Recognizing this, the family court declined to grant any further access to the child until the father had fully complied with its order. The court certainly did not preclude the father from seeking similar or even expanded relief in the future. We are not persuaded that this order is anything other than interlocutory by the father's citation to J.C. v. Commonwealth , 2013 WL 5046582 (No. 2012-CA-001731-ME) (Ky. App. Sept. 13, 2013).
Because we hold that the June 6, 2017 order, was not final or appealable, we must dismiss the above-styled appeal.
ALL CONCUR.

Judge Gene Smallwood concurred in this opinion prior to the expiration of his term of office. Release of the opinion was delayed due to administrative handling.

In addition, they argued that the appeal from the 2015 and 2016 disposition orders were untimely and that the 2017 order denying the motion to alter, amend, or vacate was interlocutory.